United States District Court
Southern District of Texas
FILED

JUL 03 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL CARRIZALES-PEREZ,

v.

AARON CABRERA, INS ACTING DIRECTOR, HLG/DO and

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES.

C.A. B-02-136

**PETITION FOR WRIT OF HABEAS CORPUS**

Daniel Carrizales-Perez, ("Mr. Carrizales"), by and through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

**I. JURISDICTION AND VENUE**

1. Petitioner Daniel Carrizales-Perez is under an administratively final order of removal, (Petitioner's Exhibit A, incorporated by reference), which order places significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham,* 371 U.S. 236,240 (1963). [1]

2. Respondent Cabrera maintains his offices, and Petitioner's removal proceedings were conducted, in Harlingen and Los Fresnos, Texas, within the jurisdiction of this Court.

[1] For example, his I-551 (proof of LPR status) (Petitioner's Exhibit B, herein incorporated by reference, is no longer valid. He is under an administratively final order of removal, cannot travel outside the U.S., and must report to INS to obtain and renew any substitute document and/or employment authorization as Respondents, in their discretion, are willing to provide. *See, e.g.* 8 C.F.R. §274a.12(c)(18) (authorizing issuance of employment authorization to certain immigrants under Orders of Supervision).

## II. THE PARTIES

3. Daniel Carrizales-Perez has been a lawful permanent resident, ("LPR"), since 1983. His entire family is lawfully in the U.S..

4. Respondent Aaron Cabrera is the Acting Director HLG/DRO of the Immigration and Naturalization Service. He is sued in his official capacity only.

5. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

## III. THE FACTS

6. Daniel Carrizales is a native and citizen of Mexico. He entered the United States as a lawful permanent resident on or about December 21, 1983 and has resided here continuously since that date. Other than his father, whose whereabouts are unknown, Mr. Carrizales' entire family is lawfully in the United States. He has a history of steady employment, and is purchasing the family home.

7. On or about June 10, 1997, pursuant to a plea bargain, Mr. Carrizales pled guilty to the offense of (simple) possession of marijuana in Brooks County, Texas. Adjudication of guilt was deferred, and he was placed on probation. At that time, this disposition did not render him subject to removal. *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995). [2]

8. Although IIRIRA, which enacted §101(a)(48)(A), removing the element of finality from the definition of conviction, had converted most deferred adjudications in convictions, *Manrique* was

---

[2] Deferred adjudication was previously not considered to be a conviction. *Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990). *See also, Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988).

not based on a lack of finality of the criminal proceedings, but on an analogy to the FFOA, which precluded a finding that there was a "conviction" in such cases. So there was no reason for Mr. Carrizales to believe that *Manrique* would be abrogated, and that he would be considered to have been "convicted" of the offense.

9. Even assuming, *arguendo,* that Mr. Carrizales should have foreseen this change in BIA policy, this disposition still ensured his eligibility for discretionary relief, in the form of cancellation of removal. *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995). *See also, Matter of K-V-D-,* Int. Dec. 3422 (BIA 1999).

9. In resolving the criminal case, Mr. Carrizales relied on the fact that this disposition carried no adverse immigration consequences, and that once he fulfilled the conditions of his probation, the charges would be dismissed. Had he known, or even suspected, that it would later be interpreted as causing mandatory deportation, with no possibility of relief, or ever returning lawfully to the United States, he would have fought the charges.

10. INS also understood at that time that this disposition did not render Mr. Carrizales removable, as seen by the fact that removal proceedings were not instituted until after the issuance of *Matter of Roldan,* Int. Dec. 3377 (BIA 1999), in which the BIA concluded that the policy exception adopted in *Manrique* had been superceded by (new) §101(a)(48)(A) of the Act, which redefined "conviction" for immigration purposes. [3] But on May 4, 2000, an NTA was issued.

---

[3] *Roldan* was reversed, in *Lujan-Armendariz v. INS* and *Roldan-Santoyo v. INS,* 222 F.3d 728 (9th Cir. 2000). The BIA declined to apply that decision nationwide in *Matter of Salazar,* 23 I&N Dec. 223 (BIA 2002), which is under review by this Honorable Court in *Salazar v. Trominski,* CA B-02-045, Hon. Hilda Tagle, presiding.

It alleged, and Mr. Carrizales conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of marijuana. Removability was charged under both §237(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and §237(a)(2)(A)(iii), for conviction of an aggravated felony, to wit, a drug trafficking offense.

11. Mr. Carrizales initially contested removability, but was dissuaded by the ruling of the Immigration Judge that, if there had been no other controlled substance offense, the Court would find that he had not been convicted of an aggravated felony, and that he was eligible for cancellation of removal. (T:7). As the Judge stated at the hearing on December 15, 2000, (T:7,8):

> [I]f he's only been convicted of one offense, possession of a controlled substance, the Court will find that's not an aggravated felony.
>
> ...
>
> ... The offense is possession of a controlled substance. If that's the only offense that he had dealing with a controlled substance, there's no question that the case is not an aggravated felony, and there's no question that he would be eligible for cancellation of removal.

INS acknowledged that there was no indication of any other controlled substance violation, and withdrew the aggravated felony charge. (T:8-9). The Judge then prodded counsel for Respondent to plead to the allegations, and the remaining charge, promising "a date for the filing of the application for relief." (T:9).

12. Based on these assurances, Mr. Carrizales admitted that he had been "convicted" of the marijuana offense, and conceded removability under the controlled substance charge. *Id.* The Court scheduled an appearance to file the application, at which time June 8, 2001 was set for the hearing on the merits of that application.

13. On June 8, 2001, Mr. Carrizales appeared, ready to proceed.

However, based on the recent decision of the Fifth Circuit in *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), the Judge allowed INS to "reinstate" the aggravated felony charge, found that it had been sustained, and that Mr. Carrizales was therefore ineligible for relief, and ordered his removal from the United States.

14. In *Hernandez-Avalos*, the Fifth Circuit held that, for purposes of the Sentencing Guidelines, whether an offense was a felony, and therefore, an aggravated felony, would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *K-V-D-*, reaffirming *Matter of L-G-*, under which this question was resolved by analogy to federal law. However, the criticism of *K-V-D-* was clearly dicta. [4]

15. Moreover, *Hernandez-Avalos* did not, as the Immigration Judge indicated, hold that **all** convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. The retroactive application of the principles enunciated in *Hernandez-Avalos* also raises reliance issues, similar to those which the Supreme Court characterized in *INS v. St. Cyr*, 121 S.Ct. 2271 (2001), as creating serious constitutional problems.

16. Mr. Carrizales filed a timely appeal, which appeal was dismissed by the BIA on June 7, 2002. The Board rejected Mr.

---

[4] As the Court noted therein, *id.*, at 509:

> [I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we would hold that the BIA's interpretation of section 924(c) [in *Matter of K-V-D-*] is plainly incorrect and that Hernandez was an aggravated felon.

Carrizales' statutory arguments, and noted that it was without jurisdiction to consider his constitutional claims. (Exhibit A).

17. On information and belief, Mr. Carrizales asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pled guilty to offenses involving simple possession of controlled substances, but whose guilt **was** adjudicated, and who therefore did not fall within the policy exception of *Matter of Manrique*, *supra*, were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal, by Respondents, prior to the issuance of *U.S. v. Hernandez-Avalos*.

18. Given his lengthy residence in the U.S., his strong family ties, employment history, and other equities, it is highly likely that Mr. Carrizales would have earned cancellation of removal, had he received the opportunity to apply for said form of relief.

## V. THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

### 1. STATUTORY CONSTRUCTION

#### a. AGGRAVATED FELONY

Mr. Carrizales fist urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether his deferred adjudication disposition constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Carrizales. To the contrary, Mr.

Carrizales asserts that the Board correctly decided *Matter of K-V-D-*, and that it erred in not applying said decision herein. *See, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without a trafficking element constitutes an "aggravated felony" under Immigration and Naturalization Act, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act).

**b. *MATTER OF ROLDAN, SUPRA.***

Mr. Carrizales also urges that, as a question of law, *Matter of Roldan, supra*, was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra*. *See*, Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (*Salazar v. Trominski, supra*, Exhibit A, 23 I&N Dec. at 237-251). *See also*, Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined. (*Id.*, 23 I&N Dec. at 251-252).

**2. EQUAL PROTECTION**

**a. FEDERAL FIRST OFFENDER ACT**

Mr. Carrizales next asserts that, for the reasons set forth in *Lujan-Armendariz, supra*, it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

**b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS**

Mr. Carrizales also asserts that, given the national character of

immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, she would have earned in the exercise of discretion.

**c. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS**

Had Mr. Carrizales's case been heard between March 3, 1999, and May 11, 2001, (after the BIA issued *Matter of Roldan*, and before the Fifth Circuit decided *Hernandez-Avalos*), he would have been considered to subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion. It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings. *See, Logan v. Zimmerman Brush*, 455 U.S. 422 (1982) (finding Due Process, and, per concurring opinion, Equal Protection violations where statute terminated claims not receiving timely hearings.)

**3. SUBSTANTIVE DUE PROCESS**

As a permanent resident, Mr. Carrizales has a fundamental liberty interest in being able to live and work in the U.S., and to remain here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar v. Trominski, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Carrizales enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Carrizales asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

**4. PROCEDURAL DUE PROCESS**

Mr. Carrizales also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Carrizales retroactively converts

a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation

> and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore,* 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Carrizales, there can

be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [5]

**5. INTERNATIONAL LAW AND TREATY OBLIGATIONS**

Finally, Mr. Carrizales urges that the instant order violates international law, and treaty obligations with Mexico, his country of origin. *See, Nicholson v. Williams*, _____ F.Supp.2d _____, (E.D.N.Y. March 18, 2002), 2002 WL 448452, at *78: [6]

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself.

---

[5] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

[6] Although *Nicholson* involved the removal of children from the parent, rather than removal of the parent from the child, the principles are the same.

*See also, Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002) (Where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction). [7]

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax), and

**VERIFICATION**

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

July 3, 2002

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of Nancy Masso, AUSA, Brownsville, Texas, this 3rd day of July, 2002.



[7] *Beharry* concluded that relief was still available where an offense was committed before IIRIRA, but the guilty plea did not occur until after its enactment.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DANIEL CARRIZALES-PEREZ, | ) | |
| | ) | |
| v. | ) | C.A. B-02-136 |
| | ) | |
| AARON CABRERA, INS ACTING DIRECTOR, HLG/DO and | ) | |
| JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES. | ) | |
| | ) | |

**EXHIBIT "A" IN SUPPORT OF**

**PETITION FOR WRIT OF HABEAS CORPUS**

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File: A38 781 160 - Harlingen

Date: JUN 07 2002

In re: DANIEL CARRIZALES-PEREZ

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Thelma O. Garcia, Esquire

ON BEHALF OF SERVICE: Thomas M. Bernstein
Assistant District Counsel

CHARGE:

Notice: Sec. 237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] - Convicted of aggravated felony

Sec. 237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] - Convicted of controlled substance violation

APPLICATION: Termination of proceedings; cancellation of removal

ORDER:

PER CURIAM: The appeal is dismissed. We affirm the Immigration Judge's determination that the respondent, a native and citizen of Mexico, is deportable as charged and subject to removal from the United States (Exh. 1; I.J. at 2-3). *See* section 240(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(3). We likewise affirm the Immigration Judge's pretermission of the respondent's application for cancellation of removal as an alien convicted of an aggravated felony (I.J. at 2-3).

The Immigration Judge found the respondent's conviction for possession of marijuana to be an aggravated felony (I.J. at 2-3). *See United States v. Hernandez-Avalos*, 251 F.3d 505, 508-10 (5th Cir. 2001) (finding that a state drug conviction is an "aggravated felony" if it is punishable under the Controlled Substance Act and is a felony under state law). We agree. Therefore, we find that the respondent is ineligible for cancellation of removal (I.J. at 2-3). *See* section 240A(a)(3) of the Act (prohibiting cancellation of removal for any alien convicted of any aggravated felony).

On appeal, the respondent argues that *Hernandez-Avalos, supra*, is not applicable to his case. Specifically, the respondent argues that his conviction cannot be characterized as a felony because he has been placed on community supervision and his conviction is subject to deferred adjudication,

rather than being subject to incarceration for a specific period of time (Respondent's Brief at 17; Form EOIR-26). However, under Texas law, the period of community supervision may not exceed 2 years in a misdemeanor case, but may be imposed up to 10 years in a felony case. *See* Tex. Crim. Proc. Ann. art. 42.12, § 5(a). The record reveals that the respondent was placed on community supervision for a period of 10 years (Exh. 7). Thus, the respondent's conviction can be properly characterized as a felony. *See Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002) (finding an alien who pled guilty to possession of marijuana to be an aggravated felon under Fifth Circuit law).

The respondent also argues on appeal that his deportation results in an impermissible retroactive application of the law because when he pled guilty to his marijuana charge, such a disposition carried no immigration consequence. We cannot rule on the constitutionality of laws enacted by Congress, and therefore decline to address the respondent's contentions regarding the retroactive application of section 101(a)(48). Moreover, the respondent entered his guilty plea after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-627 ("IIRIRA"), which amended the definition of an aggravated felony. As for the changes in how section 101(a)(48) is interpreted in recent precedent decisions issued by this Board, we note that they occurred as a result of the statutory amendments. Following the enactment of IIRIRA, the law relating to aggravated felonies changed along with the statute. The most recent Board rulings in this area of the law that characterize the respondent as an aggravated felon largely reflect the statutory changes and are not changes of the Board's own making. *See Matter of Salazar*, *supra*.

Consequently, we can discern no error committed by the Immigration Judge below in determining that the respondent is ineligible for removal relief, and affirm the Immigration Judge's rationale and result (I.J. at 2-3) Accordingly, the appeal is dismissed.

FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL CARRIZALES-PEREZ, )
)
v. ) C.A. B-02-136
)
AARON CABRERA, INS )
ACTING DIRECTOR, HLG/DO and )
JOHN ASHCROFT, ATTORNEY )
GENERAL OF THE UNITED STATES. )

EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS


RESIDENT ALIEN
010366
PGR P22


ALIEN REGISTRATION RECEIPT
21 34 665 285 54906
454 32301 88103 67866 19464
122183 582 143 03624 3634897