4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 9 2002

Michael N. Milby
Clerk of Court

DANIEL CARRIZALOS-PEREZ,          )
                                  )
v.                                )
                                  )   CIVIL ACTION NO. B-02-136
AARON CABRERA, ACTING             )
DIRECTOR, HLG/DO, THE             )
IMMIGRATION & NATURALIZATION      )
SERVICE, and                      )
JOHN ASHCROFT, UNITED STATES      )
ATTORNEY GENERAL                  )
_____ )


RESPONDENTS' RETURN AND
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS


COME NOW the Respondents, by and through Michael T. Shelby,

United States Attorney for the Southern District of Texas, and file

this Return and Motion to Dismiss the Petition for Writ of Habeas

Corpus in this case.  The petition for writ of habeas corpus should

be dismissed because the issues presented therein have been decided

by the Fifth Circuit Court of Appeals.[1]

---

[1] The issues presented and arguments made herein are identical to
those presented to this Court in <u>Salazar-Regino v. Trominski, et
al.</u>, Civil Action No. B-02-045.

## STATEMENT OF THE FACTS

The Petitioner, Daniel Carrizalos-Perez ("Carrizalos-Perez") entered the United States as a lawful permanent resident on December 21, 1983.  Government Exh. "A".  On May 16, 1997, a criminal indictment was filed charging that Carrizalos-Perez knowingly and intentionally possessed a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds.  He was entered a plea of guilty on June 10, 1997, in the District Court, Brooks County, Texas, to the offense of possession of marijuana, a third degree felony.  Adjudication of guilt was deferred and he was placed on community supervision for a period of ten years.  Government Exh. "B".

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to Carrizalos-Perez on May 4, 2000, charging that he was removable for having been convicted of a violation of a law relating to a controlled substance pursuant to §237(a)(2)(B)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(B)(i), and for having been convicted of an aggravated felony pursuant to §237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227 (a)(2)(A)(iii).  Due to the state of the law at the time, the Service withdrew the aggravated felony charge.  Government Exh. "C".  Carrizalos-Perez, through counsel, admitted the allegations of fact set out in the Notice to Appear and conceded

removability for a violation of a law relating to a controlled substance. Carrizalos-Perez sought to have his removal cancelled by filing an application pursuant to §240A(a) of the Act. A hearing date was set for June 8, 2001, on the merits of that application.

At the hearing on June 8, 2001, however, the immigration judge denied Carrizalos-Perez' application because he had been convicted of an aggravated felony as set out in the Fifth Circuit Court of Appeals ("Fifth Circuit") decision in U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001). Government Exh. "D". As a consequence, the immigration judge ordered his removal to Mexico. Government Exh. "E".

Carrizalos-Perez reserved his right to appeal and timely filed his Notice of Appeal with the Board of Immigration Appeals ("Board"). The Notice of Appeal alleged that the immigration judge erred in pretermitting the relief application and should have terminated the proceedings based on the Board decision in In Re Manrique, Int. Dec. 3250 (BIA 1995). Government Exh. "F".

In his appeal brief, Carrizalos-Perez argued many of the same issues present herein. Specifically, he argued that it violated due process to apply the definition of "conviction" to a criminal proceeding commenced before the definition was enacted, that deferred adjudication cannot be considered a felony because no specific period of incarceration was imposed, and that the Ninth

3

Circuit Court of Appeals decision in <u>Lujan-Armendariz v. INS</u>, 222 F.3d 728 (9th Cir. 2000) should be applied nationwide.

In a decision dated June 7, 2002, the Board dismissed Carrizalos-Perez' appeal.  The Board agreed with the immigration judge that Carrizalos-Perez' conviction for drug possession did amount to a conviction of an aggravated felony, making him statutorily ineligible for cancellation of removal.  The Board also found that Carrizalos-Perez's conviction could be characterized as an aggravated felony and that the changes in the Board's rulings reflected statutory changes and "not changes of the Board's own making."  Government Exh. "G".[2]

**ARGUMENT**

**I. CARRIZALOS-PEREZ HAS BEEN CONVICTED OF AN OFFENSE THAT IS A VIOLATION OF A LAW RELATING TO A CONTROLLED SUBSTANCE EVEN THOUGH, AFTER A PLEA OF GUILTY, ADJUDICATION OF GUILT WAS DEFERRED AND HE WAS PLACED ON TEN YEARS COMMUNITY SUPERVISION.**

Carrizalos-Perez argues that he is not removable as charged because he is not properly considered convicted under the definition set forth at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  Because Carrizalos-Perez's petition is dependant on

_____

[2] The Board referenced <u>Matter of Salazar-Regino</u>, 23 I&N Dec. 223 (BIA 2002) which is the Board precedent decision giving rise to the pending writ of habeas corpus before this Court - <u>Salazar-Regino v. Trominski, et al.</u>, Civil Action No. B-02-045.

the construction of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

the Court should have an understanding of the history and policy

concerns that determined whether an alien would be considered to be

convicted for immigration purposes prior to 1996.

Prior to the enactment of the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat.

3546 (September 30, 1996) ("IIRIRA"), the Act did not contain a

definition of the term "conviction." Its meaning was determined on

a case-by-case basis in administrative and judicial decisions.

Depending upon the policies and procedures involved, an alien's

guilty plea and criminal disposition might -- or might not --

constitute a "conviction" for immigration purposes.

For example, the Board had a 40-year policy that a state

conviction for a crime involving moral turpitude which had been set

aside or vacated for rehabilitative reasons would not count as a

conviction for deportation purposes. See Matter of Ozkok, 19 I & N

Dec. 546, 548-59 (BIA 1988); Matter of Ibarra-Obando, 12 I & N Dec.

576 (BIA 1966; A.G. 1967); Matter of G-, 9 I & N Dec. 159 (BIA

1960; A.G. 1961); Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G.

1959).[3] The Attorney General refused to extend this policy to drug

convictions, however. Thus, in 1959 the Attorney General decided

---

[3/]    This policy was repeatedly challenged within the agency
during the 1960's, but the Board maintained its policy toward
expunged or vacated state convictions involving moral turpitude
because the policy  was longstanding and there was no congressional
intent to the contrary. See Matter of G-, 9 I & N at 164-65.

that an alien's drug conviction would still count for immigration purposes, regardless of whether it had been vacated, expunged, or dismissed for rehabilitative reasons under state law, because this would promote uniform application of the immigration laws and would be consistent with Congress' strict policy against drug offenders. Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the First Circuit Court of Appeals ("First Circuit"), decided not to consider a conviction that had been set aside under the Federal Youth Corrections Act ("FYCA") to be a "conviction" for immigration purposes, because the First Circuit made the policy decision that it was more important to give greater priority to Congress' criminal policy of leniency toward youthful offenders than to its immigration policy of deporting drug offenders. Mestre Morera v. INS, 462 F.2d 1030 (1st Cir. 1972). Two years later, in 1974, the Board also made this policy choice, deciding not to consider a drug charge that had been expunged under the FYCA to be a conviction for immigration purposes. Matter of Zingis, 14 I & N Dec. 621 (BIA 1974).

That same year then-Solicitor General Bork urged the Board to construe the term "conviction" generously in favor of aliens, give effect to state rehabilitative statutes, and extend to state youthful and first-time drug offenders guilty of simple possession the same policy of leniency the Board had extended to federal offenders. Matter of Andrade, 14 I & N Dec. 651, 654 (BIA 1974)

6

(Memorandum of Solicitor General).  The Board followed this recommendation, holding that the Federal First Offender Act ("FFOA") was the equivalent of the FYCA, and that as a matter of policy a drug conviction "expunged" under the FFOA, or a state "counterpart," would not be considered a conviction for immigration purposes.  Matter of Werk, 16 I & n Dec. 234 (BIA 1977);  Matter of Kaneda, 16 I & N Dec. 677 (BIA 1979); Matter of Haddad, 16 I & N Dec. 253 (BIA 1977).  The Board chose to apply this new policy narrowly, however, and considered drug offenders who were given rehabilitative treatment under state statutes that were broader in scope than the federal first-offender statute to have a "conviction" for immigration purposes.  Matter of Deris, 20 I & N Dec. 5 (BIA 1989).

The policy decisions were made against the backdrop of an administrative construction of "conviction" that also required the following:  (1) a judicial finding of guilt, (2) some court action removing a defendant's case from active consideration, such as a fine, sentence, or suspension of sentence, and (3) that the disposition was considered to be a conviction by the state, at least for some purpose.  See Matter of L-R, 8 I & N Dec. 269 (BIA 1959).  By 1988, however, the Board had concluded that its interpretation of what constituted a conviction was unsatisfactory, because it did not fully encompass conviction-deferral procedures or prejudgment probation, i.e. dispositions in which aliens

formally admitted their guilt but thereafter deferred proceedings and avoided a formal conviction, through a variety of state procedures.  See Matter of Ozkok, 19 I & N Dec. 546.  In addition, the Board was concerned that the variety of state rehabilitative procedures and the rulings regarding expungements were leading to "anomalous and unfair results" and were permitting aliens who were clearly guilty of criminal conduct, and whom Congress intended to be considered convicted, to escape the immigration consequences of their conduct.  Id. at 551. The Board adopted what it hoped would be a uniform federal standard defining "conviction." Id.  For formal judgments, the Board concluded that it would consider a person to be convicted if "the Court has adjudicated him guilty or has entered a formal judgment of guilt."  Id.

For "deferred adjudications"  -- where a formal judgment was deferred or  withheld pending probation --  the Board decided that a "conviction" should exist for immigration purposes if the following requirements were met:

> (1)  a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt;
>
> (2)  the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation

of non-essential activities or privileges, or
community service); and

(3)  a judgment or adjudication of guilt may be
entered if the person violates the terms of his
probation or fails to comply with the
requirements of the court's order, without
availability of further proceedings regarding
the person's guilt or innocence of the original
charge.

Matter of Ozkok, 19 I & N Dec. at 551-52.

This did not lead to the uniformity of result the Board had
intended.  Instead, criminal aliens who pled or were found guilty
of an offense and had been sentenced to probation could still
escape the immigration consequences of their conduct depending on
the state procedures involved.  Compare Martinez-Montoya v. INS,
904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty
plea, withheld conviction, and probation is not a conviction for
immigration purposes), with Yanez-Popp v. INS, 998 F.2d 231 (4th
Cir. 1993) (holding that Maryland guilty plea without entry of
judgment, plus probation, is a conviction) and Molina v. INS, 981
F.2d 14 (1st Cir. 1992) (holding that Rhode Island nolo contendere
plea plus probation is a conviction).

In the 1990s, the Board reconsidered its policy toward first-
time state drug offenders whose convictions had been vacated or
expunged.  In Matter of Manrique, Int. Dec. 3250, 1995 WL 314732
(BIA 1995), the Board decided that it would not consider a vacated
state drug offense to be a conviction for immigration purposes if

(1) the alien was convicted of simple possession; (2) it was his

first offense; (3) he had received no previous first-offender

treatment, and (4) the court entered an order pursuant to a state

rehabilitative statute under which "the alien's criminal

proceedings have been deferred pending successful completion of

probation or the proceedings have been or will be dismissed after

probation." Id. at 12.

Thus, as shown above, by 1996 there was no one, uniform

federal definition of conviction for immigration purposes.

Instead, there were a variety of exceptions that had evolved by

balancing concerns about finality, respect for state dispositions,

uniformity of results, strict federal drug policies, federal

rehabilitation policies for youthful offenders and first-time drug

offenders -- and by attempting to take into account the

distinctions between conviction-deferral or pre-judgment probation

procedures and post-conviction expungement procedures.

These various exceptions caused discrepant results.  Depending

on the procedures and competing policies involved, an alien who

admitted his guilt and was given some form of probation, and

subsequently obtained a dismissal or vacatur of the charge might,

or might not, be convicted for federal immigration purposes.   The

problems of uneven enforcement of federal immigration laws, and of

aliens escaping the consequences of their criminal conduct because

of a variety of rehabilitative procedures, which the Board had

sought to remedy in <u>Ozkok</u>, still remained.    <u>See</u> <u>generally Matter</u>

<u>of Ozkok</u>, 19 I & N Dec. at 550 -51.

It was in this context that Congress enacted IIRIRA, which was

signed by the President on September 30, 1996.  IIRIRA added a new

provision to the Act.  Section 101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), sets forth for the first time a uniform statutory

definition of the term "conviction."  <u>See</u> IIRIRA §322(a) codified

at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (1998).  That new

definition states as follows:

>          (A)  The term 'conviction' means, with respect
>          to an alien, a formal judgment of guilt of the
>          alien entered by a court or, if adjudication of
>          guilt has been withheld, where--
>
>          (i)  a judge or jury as found the alien guilty
>          or the alien has entered a plea of guilty or
>          nolo contendere or has admitted sufficient
>          facts to warrant a finding of guilt, and
>
>          (ii) the judge has ordered some form of
>          punishment, penalty, or restraint on the
>          alien's liberty to be imposed.
>
>          (B)  Any reference to a term of imprisonment or
>          a sentence with respect to an offense is deemed
>          to include the period of incarceration or
>          confinement ordered by a court of law
>          regardless of any suspension of the imposition
>          or execution of that imprisonment or sentence
>          in whole or in part.

<u>See</u> §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  The Joint

Conference Report commented on the congressional intent in drafting

this provision as follows:

This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in Matter of Ozkok, 19 I & N Dec. 546. As the Board noted in Ozkok, there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction. Ozkok, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. For example, the third prong of Ozkok requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge. In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the Ozkok definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes.

This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996 WL

563320 *496-97 [Leg.History](emphasis added).

Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), creates a uniform definition of conviction that is no longer dependent upon the vagaries of state law, and that requires an alien who has pled guilty and received a deferred adjudication and some form of probation to be considered convicted for immigration purposes, regardless of whether there are further proceedings available on the issue of guilt or innocence upon his violation of probation. Moosa v. INS, 171 F.3d 994, 1004-06 (5th Cir. 1999); see also Matter of Punu, Int. Dec. 3364 (BIA 1999) (the third prong of Ozkok for determining whether a conviction exists with regard to deferred adjudication has been eliminated by §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) and deferred adjudication in Texas is a conviction for immigration purposes); Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999) (an alien has been convicted for immigration purposes where there is a finding or admission of guilt and some punishment is imposed).

As shown, Carrizalos-Perez pled guilty in state court to possession of marijuana and was placed on probation. Pursuant to §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), this properly constitutes a conviction because there was a guilty plea and some form of punishment or restraint on liberty. Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), eliminates the prior administrative and judicial exceptions for state deferred adjudications, prejudgment probations, vacated or expunged offenses, or first-time

state drug offenses.  The plain reading of the statute supports
this conclusion.

> A.   Congress' intent is clear and
> unambiguous:  the plain language of the
> statute requires only a formal judgment of
> guilt, or a plea and some form of
> restraint on liberty, and there is no
> exception for vacated, dismissed, or
> expunged convictions or first-time drug
> offenses of simple possession, and none
> may be implied.

The starting point for statutory construction is the language
of the statute.  See INS v. Phinpathya, 464 U.S. 183, 188 (1984);
see also INS v. Cardoza-Fonseca, 480 U.S. 421. 431 (1987).  The
plain meaning of the words used is the paramount indicia of
congressional intent.  Cardoza-Fonseca, 480 U.S. at 431.  It is
assumed that the legislative purpose is expressed by the plain
meaning of the words used.  Phinpathya, 464 U.S. at 189.

The plain language of §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48), states that "the term 'conviction' means . . . the
alien has entered a plea of guilty . . . and the judge has ordered
some form of punishment, penalty, or restraint on the alien's
liberty to be imposed." §101(a)(48)(A) of the Act, 8 U.S.C.
§1101(a)(48)(A).  As the Fifth Circuit has noted, the language of
the statute is plain and clear.  See Moosa v. INS, 171 F.3d at
1005.  Under the Fifth Circuit's reading of the statute, there is
no question that Carrizalos-Perez's disposition comes squarely

within this definition, because she pled guilty to her drug offense and was given probation.

When a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated. Colautti v. Franklin, 439 U.S. 379 (1978). In addition, as the Supreme Court has made very clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied. See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983), superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980).

The definition of a conviction states, inter alia, that it "**means**" a guilty plea and some form of imposition on liberty. §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (emphasis added). See Moosa v. INS, 171 F.3d at 1005. "No modifier is present, and nothing suggest[s] any restriction on the scope of the term 'convict[ion].'" Dickerson, 460 U.S. at 111. "Nothing on the face of the statute suggests a congressional intent to limit its coverage." Id. There are no exceptions for the kinds of state dispositions that the Board previously determined would not be considered a "conviction" for reasons of policy, such as vacated or expunged state convictions, or first-time drug offenses of simple possession under federal or state law

Since this is the case, Carrizalos-Perez has been "convicted" for federal immigration purposes under the plain meaning of the statute.  He pled guilty to possession of marijuana and he was given ten years community supervision.  It is clear that Congress intended him to be considered convicted for immigration purposes. Congress has spoken to the precise question at issue.  Its intent is clear.

> B.  Congress' intent is also clear and unambiguous, because the Committee Report shows that  Congress intended to "broade[n]" the definition of "conviction," eliminate the effects of ameliorating statutes, make guilt not rehabilitation  the dispositive factor, and prevent aliens who are guilty of criminal conduct from escaping the immigration consequences of their crimes.

A clear statement of legislative purpose in a committee report is powerful evidence of Congress' intent and should be given effect.  See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp. v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the purpose of adding §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), was to "deliberately broade[n]" the preexisting definition of a conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that Congress was dissatisfied with the preexisting interpretation of

what constituted a conviction, and intended to expand it to include more kinds of dispositions than previously covered -- thus clearly encompassing Carrizalos-Perez's first-time state drug offense, which previously would not have qualified as a conviction under Matter of Manrique.

The Committee Report shows that Congress clearly intended the dispositive factor for determining whether an alien has been convicted for immigration purposes to be whether he is **guilty of criminal conduct** -- not the type of disposition he received or whether he is eligible for rehabilitative treatment of some type. Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions], aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996). The Committee Report also states that Congress wanted to stop treatment "that **prevents the original finding or confession of guilt to be considered a 'conviction' for deportation purposes**" and that Congress was seeking **to "clarif[y] [its] intent that . . . the original finding or confession of guilt is sufficient to establish**

<u>a 'conviction' for purposes of the immigration laws."</u>   <u>Id.</u>
(emphasis added).[4]

The Committee Report demonstrates a clear and unambiguous intent on Congress' part to make the type of disposition that Carrizalos-Perez received a conviction for immigration purposes. It states that Congress wants to ensure that an alien who pleads guilty -- as Carrizalos-Perez did -- cannot escape the immigration consequences of his criminal conduct. Most importantly, it rejects the policies of leniency, rehabilitation, and deference to differing laws that led the Board and the courts to adopt the preexisting state exceptions to the definition of a conviction. Accordingly, the Committee Report  -- like the plain language of the statute -- makes clear that Congress intended Carrizalos-Perez to be "convicted" for immigration purposes because of his guilty plea and probation.

---

[4]   These latter two statements were made by Congress addressing, by way of example, "deferred adjudications," or the types of state dispositions that deferred or withheld judgment upon probation but then required some further proceeding on guilt or innocence upon a violation of probation.

C.    Congress' intent is clear and
unambiguous:  other related provisions of
the Act and their legislative history show
that Congress has now implemented a tough
new immigration policy toward criminal
aliens that rejects leniency and
rehabilitation in favor of removal.

It is well settled that in determining the meaning of a
statute, all related parts of the statute should be construed
together.    See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39
(1939).  Each provision that pertains to the same subject must be
construed in pari materia with other sections on the same subject,
and this rule has the greatest force where statutes were enacted at
the same time.  United States v. Steward, 311 U.S. 60 (1940);
Erlenbaugh v. United States, 452 U.S. 967 (1972);  2B Singer,
Sutherland Statutory Construction §51.03 at 140 (5th ed. 1992).
Construing §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), in pari
materia with other provisions enacted in IIRIRA, it is clear that
the Board's construction in the present case reflects a new,
tougher policy on Congress' part toward criminal aliens, which does
not want them to be treated leniently.  Section 101(a)(48) of the
Act, 8 U.S.C. §1101(a)(48), was one of several amendments in IIRIRA
that were designed to implement this policy.  In addition to
enacting the section, Congress also enacted a provision that
expands the number of crimes that render an alien deportable for
commission of an "aggravated felony.  See §101(a)(43) of the Act, 8

U.S.C. §1101(a)(43) (Supp. IV 1998). It created new custody rules mandating the detention of criminal aliens pending their proceedings. See §236(c) of the Act, 8 U.S.C. §1226(c) (Supp. IV 1998). It withdrew discretionary relief for criminal aliens. See §242A of the Act, 8 U.S.C. §1229a (Supp. IV 1998). And, Congress eliminated judicial review for several kinds of criminal aliens. See §242(a)(2)(C) of the Act, 8 U.S.C. §1229(a)(2)(C).

Indeed, the legislative history of the bills that eventually became IIRIRA are replete with concerns about recidivism. It was in this context that Congress enacted IIRIRA in 1996 and the definition of "conviction" in §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48). Congress' concerns about the unacceptably high rate of recidivism of criminal aliens, and the threat they pose to public safety shows a clear intent to reach all aliens – like Carrizalos-Perez – who are guilty of criminal conduct and to not afford them any leniency, especially by giving effect to rehabilitative procedures or policies that would permit them to avoid removal. Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), implements that intent.

## II. CARRIZALOS-PEREZ HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS INELIGIBLE FOR RELIEF.

Carrizalos-Perez argues that he has not been convicted of an aggravated felony because his crime was simple possession of a controlled substance and not a drug trafficking crime. He bases

his position on the Board's holding in <u>Matter of L-G-</u>, 21 I&N Dec. 89 (BIA 1995) and <u>Matter of K-V-D-</u>, Int. Dec. 3422 (BIA 1999). Carrizalos-Perez contends that the Fifth Circuit's position in <u>U.S. v. Hernandez-Avalos</u>, 251 F.3d 505 (5th Cir. 2001), upon which the Board relied in deciding his case, was dicta and, therefore, not controlling. He believes that the Board should have relied on its prior holding in <u>K-V-D-</u>, in deciding his case. Carrizalos-Perez fails to consider that, prior to <u>K-V-D-</u>, the Fifth Circuit held that a crime that violated the Controlled Substances Act and is a felony under either state or federal law is an aggravated felony, albeit in a sentencing guidelines context. <u>U.S. v. Hinojosa-Lopez</u>, 130 F.3d 691 (5th Cir. 1997).

In <u>Matter of L-G-</u>, the Board held that the federal definition of "felony" within the meaning of 18 U.S.C. §924(c) (1994) applied in determining whether a crime was an aggravated felony. <u>Matter of L-G-</u> at 94. Further, the Board found that for immigration purposes, a state drug crime would qualify as a "drug trafficking crime" if it were punishable as a felony under the Controlled Substances Act (21 U.S.C. §801, et seq.). Finally, the Board declared its disagreement with the Second Circuit Court of Appeals decision in <u>Jenkins v. INS</u>, 32 F.3d 11 (2d Cir. 1994) (a state conviction for a drug offense which is a felony under state law, but a misdemeanor under federal law is a conviction classified as an aggravated felony) and declined to apply the decision in cases

arising outside the Second Circuit.  Matter of L-G- was decided in 1995 - prior to the enactment of IIRIRA.

The term "aggravated felony" was first added to the Act by Sec. 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4181.  The term was first defined within the federal sentencing guidelines.  The types of crimes with immigration consequences have expanded over the years to its present definition. §101(a)(43) of the Act, 8 U.S.C. §1101(a)(43).  Included in the definition of "aggravated felony" is "illicit trafficking in a controlled substance (as described in section 102 of the Controlled Substances Act) including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)."  §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B).

In December 1997, the Fifth Circuit, in addressing the issue for the first time, found that a Texas felony conviction for possession of marijuana to be an "aggravated felony" as that term was defined within the sentencing guidelines.  U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997). The United States Code defines a "drug trafficking crime" as "any felony **punishable** under the Controlled Substances Act (21 U.S.C. §801 et seq.) ... ."  18 U.S.C. 924(c)(2) (emphasis added). The Controlled Substances Act defines a "felony" as "any Federal or **State offense** classified by applicable Federal or State law as a felony."  21 U.S.C. §802(13) (emphasis added).  Further, the Controlled Substances Act defines "felony drug

22

offense" as "an **offense** that **is punishable** by imprisonment for more than 1 year under any law of the United States or **of a State** ... ." 21 U.S.C. §802(44) (emphasis added); *see generally, U.S. v. Sandle,* 123 F.3d 809, 811-812 (5th Cir. 1997) (applying 21 U.S.C. §802(44) to a Texas possession of cocaine offense, for which the individual received deferred adjudication, and finding that a prior Texas state conviction was properly considered a prior felony drug offense sufficient to trigger the enhancement provisions of the federal Sentencing Guidelines).

In interpreting 18 U.S.C. §924(c)(2), the Fifth Circuit in Hinojosa-Lopez found that this provision "defines a 'drug trafficking crime' as 'encompassing *two separate* elements: (1) that the offense be punishable under the Controlled Substances Act (or one of the other two statutes defined); and (2) that the offense be a felony.'" Hinojosa-Lopez at 694 quoting U.S. v. Restrepo-Aguilar, 74 F.3d 361, 364 (1st Cir. 1996). The Fifth Circuit further explained that "a state drug offense is properly deemed a 'felony' within the meaning of 18 U.S.C. §924(c) as incorporated by application of note 7 to U.S.S.G. §2L1.2, if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law." Id.

Carrizalos-Perez was convicted under the Texas Controlled Substances Act §481.121 for possession of marijuana. He was charged

and convicted for intentionally and knowingly possessing a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. This offense is a third degree felony. In the State of Texas, a third degree felony is punishable by a term of imprisonment of not more than ten years or less than two years. *Tex. Penal Code Ann.* §12.34 (Vernon 1998). The fact that adjudication of guilty was deferred and that the respondent received community supervision and not a term of imprisonment is irrelevant. The offense Carrizalos-Perez was convicted of is a **felony** which is **punishable** for a term of more than one year and is a violation of the Controlled Substances Act. Therefore, the definition of "aggravated felony" applies to this case and Carrizalos-Perez has been convicted of a crime classified as an aggravated felony.

In December 1999, the Board ignored the Fifth Circuit holding in Hinojosa-Lopez, finding that the decision defined the term "aggravated felony" in a sentencing guideline context and the Board was free to interpret that term differently in an immigration context. Matter of K-V-D-, Int. Dec. 3422 (BIA 1999). The Board then went on to hold that a Texas felony conviction for simple possession of a controlled substance, which is a misdemeanor under federal law, is not a conviction of an aggravated felony within the meaning of §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B). Thus, it affirmed its prior decision in Matter of L-G-.

The Fifth Circuit revisited the issue of aggravated felony in May 2001. U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001). First, the Fifth Circuit affirmed its earlier holding in Hinojosa-Lopez that a state drug conviction is a "drug trafficking crime" and, therefore, an "aggravated felony" if the offense is punishable under the Controlled Substances Act and if the offense is a felony under state law. The Hernandez-Avalos Court then went on to address some of the same concerns expressed by Carrizalos-Perez – the lack of uniform application of the law, both within the Circuit and throughout the United States.

Like Hernandez-Avalos, Carrizalos-Perez suggests that it is fundamentally unfair to apply the strict interpretation of "aggravated felony" as set out in Hinojosa-Lopez in some cases and the more lenient Board precedent to other cases. He contends that since he was found by the Board of having been convicted of an aggravated felony, he was not afforded the same opportunities as an alien whose removal proceedings were conducted at an earlier time and followed then-existing Board precedent. The Fifth Circuit clearly rejected that contention finding no reason "to hold that it is fundamentally unfair to treat Hernandez [or Carrizalos-Perez] as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." Hernandez-Avalos at 509.

Finally the Fifth Circuit found no validity in interpreting 18 U.S.C. §924(c) "differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance." Id.

> We agree that the plain language of the statutes
> "indicate[s] that Congress made a deliberate
> policy decision to include as an 'aggravated
> felony' a drug crime that is a felony under
> state law but only a misdemeanor under the
> [Controlled Substances Act]," [U.S. v.] Briones-
> Mata, 116 F.3d [308] at 310, and that the lack
> of a uniform substantive test for determining
> which drug offenses qualify as "aggravated
> felonies" "is the consequence of a deliberate
> policy choice by Congress" that the BIA and the
> courts cannot disregard. [U.S. v.] Restrepo-
> Aguilar, 74 F.3d [361] at 366. We are therefore
> unpersuaded by the BIA's and Second Circuit's
> approach to interpreting the identical statutory
> term differently depending upon whether the case
> involves sentencing or immigration.

Hernandez-Avalos at 510.

Based on the Fifth Circuit's decision in Hernandez-Avalos, the Board recently held that an alien whose adjudication of guilt had been deferred following a plea of guilty to possession of a controlled substance is considered to have been convicted of the offense for immigration purposes. See Matter of Salazar-Regino, 23 I&N Dec. 223 (BIA 2002). Additionally, the Board held that a conviction for possession of a controlled substance is a conviction of an aggravated felony. Id. at 235. The Board also held that it would not apply the Ninth Circuit's decision in Lujan-Armendariz

outside the Ninth Circuit and that <u>Matter of K-V-D-</u>, Int. Dec. 3422 (BIA 1999) would not be applied to cases arising within the Fifth Circuit's jurisdiction. <u>Id</u>.

In a later decision, the Board held that a determination of whether a state drug offense is a "drug trafficking crime", and thus an aggravated felony, will be based on the decisional authority of the federal circuit courts of appeal and not by reference to any legal standard adopted by the Board. <u>Matter of Yanez-Garcia</u>, 23 I&N Dec. 390 (BIA 2002). The Board reexamined its decisions in <u>Matter of K-V-D-</u>, <u>Matter of L-G-</u>, and <u>Matter of Davis</u>, 20 I&N Dec. 536 (BIA 1992). The Board overruled its decision in <u>Matter of K-V-D-</u>, and modified its decisions in <u>Matter of L-G-</u> and <u>Matter of Davis</u> to the extent they are inconsistent with its ruling in <u>Matter of Yanez-Garcia</u>. <u>Matter of Yanez-Garcia</u> at 396.

Carrizalos-Perez's claim that applying the Board's decision in <u>Matter of Roldan</u> and the Fifth Circuit's decision in <u>Hernandez-Avalos</u> to his case deprives him of procedural due process involving "fair notice" is suspect. Carrizalos-Perez's conviction was entered in June 1997, nine months after the enactment of IIRIRA. It is absurd to believe that Carrizalos-Perez considered the immigration consequences of his actions prior to engaging in his criminal activity. Likewise, if Carrizalos-Perez had truly considered the immigration consequences as strategy in his criminal proceedings, he would have been alerted to the sweeping statutory changes brought

about by IIRIRA and would have been cautious in relying on decisions rendered prior to its enactment.

"[T]he United States has always been a nation of immigrants; it is one of our greatest strengths.  But aliens arriving at our shores must understand that residency in the United States is a *privilege*, not a *right*.  For those aliens ... who engage in ... criminal acts during their stay here, this country will not offer its embrace." Matter of Jean, 23 I&N Dec. 373, 384 (A.G. 2002).  Having no **right** to remain in this country, Carrizalos-Perez should have been aware of the possibility that his **privilege** to reside here legally was in jeopardy at the time he was arrested for his drug offense.  To believe otherwise is unconscionable.

Until the Board has rendered its decision, there is no administratively final decision.  As an ongoing application, the alien runs the risk that, during the pendency of the appeal, the law may change, perhaps in an unfavorable way.  The law in this area is always evolving and what may be the law today may not be the law tomorrow.  A case decided according to Board precedent yesterday may be decided differently today based on changes in the law, either statutorily or through court decisions.  Carrizalos-Perez has been convicted of an offense defined by the Controlled Substances Act. The crime for which he was convicted - possession of marijuana in an amount of between five and fifty pounds - is a felony in the State

of Texas.  In the Fifth Circuit, this amounts to a "drug trafficking

crime" and, therefore, an aggravated felony.

### III. THE RULING ON THE NINTH CIRCUIT COURT IN LUJAN-ARMENDARIZ v. INS SHOULD NOT BE APPLIED IN THIS CASE AS IT HAS NO EFFECT ON CARRIZALOS-PEREZ'S CONVICTION.

In Lujan-Armandariz v INS, 222 F.3d 728 (9th Cir. 2000), the

Ninth Circuit consolidated the cases of Mauro Roldan-Santoyo[5] and

Lujan-Armendariz to determine whether the definition of

"conviction" enacted in §101(a)(48)(A) of the Act, 8 U.S.C.

§1101(a)(48)(A), repealed the Federal First Time Offender Act[6], and

whether such treatment should be extended to the FFOA's state

counterparts.  The first-time drug possession convictions of Roldan

and Lujan had been set aside pursuant to state rehabilitative

statutes.  Finding that their convictions satisfied the

requirements of the FFOA, the Ninth Circuit concluded that the

convictions of Roldan and Lujan were not "convictions" for

---

[5]  Roldan's appeal to the Board resulted in Matter of Roldan, Int. Dec. 3377 (BIA 1999).

[6]  The FFOA applies to first-time federal drug offenders guilty of simple possession, who have the charges against them dismissed after they plead guilty and serve their term of probation.  The FFOA provides that after such a charge is dismissed, it "shall not be considered a conviction for the purpose of disqualification or disability imposed by law upon conviction of a crime, or for any purpose."  18 U.S.C. §3607(b).  Further, the person shall be restored, "in the contemplation of the law to the status he

immigration purposes and they rejected the interpretation of §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A) adopted by the Board in Matter of Roldan, Int. Dec. 3377.

In reaching this conclusion, the Ninth Circuit decided that the Board had, in effect, wrongly construed the definition of "conviction" to be an implied repealer of the FFOA, when it was in fact a "minor exception" to that definition. Id. at 744-45. The panel then concluded that since the FFOA was an exception to the definition of "conviction," it would offend equal protection under the rule established by it in Garberding v. INS, 30 F.3d 1187 (9th Cir. 1994) not to extend FFOA treatment to comparable state offenders like Lujan and Roldan. Accordingly, the panel held Lujan and Roldan could not be treated as having a "conviction" for immigration purposes. Lujan, 222 F.3d at 744-45, 749.[7] The Ninth Circuit's decision in Lujan conflicts with the plain language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), which, as shown and found by the Fifth Circuit in Moosa v. INS, 171 F.3d at 1005, is clear and unambiguous and permits no exceptions for rehabilitative state statutes. It should be noted that even the Lujan majority noted that its decision did not effect that the

---

occupied before such arrest or institution of criminal proceedings." Id., §3607(c).

[7]  It bears mentioning that in Garberding, the Ninth Circuit held that the FFOA need only be given effect to aliens who received lenient treatment under state programs. Here, because Congress has

conviction definition has on state expungements under state
rehabilitation laws in general. Lujan, 222 F.3d at 742.

The analysis applied by the panel in Lujan reached the issue
of whether the conviction definition repeals the First Offender Act
in whole or in part. The Court concluded that it does not and that
the FFOA trumps the clear language of §101(a)(48) of the Act, 8
U.S.C. §1101(a)(48). Lujan, 222 F.3d at 742. However, the
conclusion is contrary to the longstanding rule of statutory
construction that a general statute will not govern if a specific
statute covers the case. Resolution Trust Corp v Seale, 13 F.3d
850, 854 (5th Cir. 1994) citing Green v Bock Laundry Mach. Co., 490
U.S. 504, 524 (1989); Morton v Mancari, 417 U.S. 535, 550-551
(1974). Applying these principles sub judice, §101(a)(48)(A) of the
Act, 8 U.S.C. §1101(a)(48)(A), which specifically deals with the
effects of rehabilitative expungements for immigration purposes,
takes precedence over the FFOA.

To the extent that it has addressed the issue, the Fifth
Circuit has agreed with the Board in finding that the definition of
"conviction" encompasses Texas deferred adjudications. See Moosa v
INS, 171 F.3d 994, 1005 (holding that Texas deferred adjudication
was a "conviction" for purposes of determining an alien's
eligibility for permanent residency pursuant to § 245A of the Act,

---

expressly barred the use of deferred adjudication, Carrizalos-
Perez' treatment should not be given effect.

8 U.S.C. §1255a); Garnica-Vasquez v Reno, 210 F.3d 558 (5th Cir.

2000)(a habeas case of a petitioner with a deferred adjudication of

guilty for indecency with a child in which the Court cited Moosa

and noted that a deferred adjudication is a conviction for

immigration purposes).

Additionally, two other courts of appeals have construed

§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) differently than the

Lujan majority as to the clarity and meaning of the statute's

language as applied to rehabilitative expungements.  See Herrera-

Inirio v INS, 208 F.3d 299 (1st Cir. 2000)(holding expunged crime

of domestic violence is still a conviction for immigration

purposes); Griffiths v INS, 243 F.3d 45 (1st Cir. 2001)(First

Circuit defers to Board's interpretation of "conviction" where

petitioner was subject to a "guilty filed" disposition as a result

of a firearm violation under Massachusetts law) United States v

Campbell, 167 F.3d 94 (2d Cir. 1999)(Texas drug conviction vacated

upon completion of probation is a "conviction" within the meaning

of new statute as incorporated by federal sentencing guidelines).

As argued, §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

makes "guilt" the dispositive factor in whether there is a

"conviction" for immigration purposes – not what type of

rehabilitative treatment a criminal received, and Congress intended

to prevent aliens who were clearly guilty of criminal conduct from

using a variety of rehabilitative procedures to escape the immigration consequences of their crimes.

Finally, the court in <u>Lujan</u> misunderstands the prior extension of federal first offender treatment to state offenders. In <u>Carr v. INS</u>, 86 F.3d 949, 951-52 (9th Cir, 1996), affirming that this extension had no effect for state firearms offenders, the Ninth Circuit repeatedly described <u>the agency's extension</u> of FFOA treatment to state offenders as a "policy," "practice," or "approach". In addition, in <u>Paredes-Urrestarazu v. INS</u>, 36 F.3d 801, 814-15 (9th Cir. 1994), the Ninth Circuit also repeatedly described <u>the agency's</u> extension of FFOA treatment to state offenders as a "policy" or "a long-standing practice." Accordingly, the Ninth Circuit has clearly acknowledged that the extension of FFOA treatment derived out of Board policy and not a constitutional mandate.

Given that the extension of FFOA treatment resulted of Board policy, it is well-established that the Board may elect to proceed upon a different course. <u>Rust v. Sullivan</u>, 500 U.S. 173, 186-87 (1991) ("An agency is not required to 'establish rules of conduct to last forever'"). As the Supreme Court has acknowledged:

> The fact that the agency has from time to time
> changed its interpretation of the term . . .
> does not . . . lead us to conclude that no
> deference should be accorded the agency's
> interpretation of the statute. . . . On the
> contrary, the agency, . . . must consider

> varying interpretations and the wisdom of its
> policy on a continuing basis.

Chevron, 467 U.S. at 863-64.  An agency need only justify its
decision to change policy by providing a "reasoned analysis."
Motor Vehicle Manufacturers Association v. State Farm Mutual
Automobile Insurance, 463 U.S. 29, 42 (1983); Davila-Bardales v.
INS, 27 F.3d 1, 5(1st Cir. 1994).

With the Board was free to reconsider the wisdom of its
interpretation on a continuing basis, the Board was justified in
taking occasion to re-evaluate its policy regarding state
expungements of convictions for at least two reasons.  First,
Congress, in enacting §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48), provided a uniform definition of a "conviction" - a
definition which had previously been provided only by the Board's
interpretation.  Second, it was appropriate for the Board to
interpret the definition of a "conviction" and its policy regarding
expungements in light of the decisions of the Fifth Circuit
regarding the role of equal protection in the expungement context.
As such, this Court should follow the Board and find that under
§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), Carrizalos-Perez
stands convicted for immigration purposes.  The plain language of
the statute provides that Carrizalos-Perez is removable by reason
of having committed criminal offenses covered by §237(a)(2)(A)(iii)

of the Act, 8 U.S.C. §1227(a)(2)(A)(iii), and §237(a)(2)(B)(i) of the Act, 8 U.S.C. §1227(a)(2)(B)(i).

It bears noting that Carrizalos-Perez was convicted of having between five and fifty pounds of marijuana in his possession.  He was convicted in Brooks County, Texas, a remote county between Brownsville, Texas, and Houston, Texas, in which there is an immigration checkpoint.  However, he resides in the Rio Grande Valley of south Texas.  The circumstances of his arrest and conviction are unknown.

Unlike the federal statutes, Texas statutes do not provide for possession with intent to deliver - an offender is either charged with possession or delivery regardless of the amount involved. However, based solely on the amount involved, drug trafficking can be inferred.  See e.g., Nunez-Payan v. INS, 811 F.2d 264, 267, rehrng denied 815 F.2d 384, 385 (5th Cir. 1987); Matter of Rico, 16 I&N Dec. 181, 186 (BIA 1977); Matter of R-H-, 7 I&N Dec. 675, 676 (BIA 1958).  The Board has held that a state drug offense is an aggravated felony under state law if it is a felony under state law and has a nexus to the unlawful trading, dealing, or selling of a controlled substance to be considered illicit trafficking as commonly defined.  Matter of Davis, 20 I&N Dec. 536 (BIA 1992). Construed as a drug trafficking crime, Carrizalos-Perez would not have been afforded FFOA treatment.  He is not being treated

differently because he was convicted of possession of marijuana in the State of Texas.

Carrizalos-Perez's position that just because the Ninth Circuit reached a result that was favorable to the aliens in Lujan-Armendariz, he should be afforded the same consideration regardless of the fact that she falls within the jurisdiction of the Fifth Circuit is also unreasonable.  Such a broad statement has been rejected by both the Eleventh Circuit Court of Appeals ("Eleventh Circuit") and the Eighth Circuit Court of Appeals ("Eighth Circuit").  Fernandez-Bernal v. Attorney General, 257 F.3d 1304 (11th Cir. 2001); Vasquez-Velezmoro v. INS, 281 F.3d 693 (8th Cir. 2002).

The Eleventh Circuit in Fernandez-Bernal found that it was not a violation of equal protection to treat an alien convicted under a state rehabilitative statute differently than an alien convicted under FFOA if the term of probation was different.  "[T]reating aliens differently based on the nature of the sentence they receive" does not violate equal protection.  Fernandez-Bernal at 1317.  "[N]othing requires that aliens whose sentences would not have been expunged under the FFOA be given better treatment under immigration laws merely because they received their sentences and expungements under state law."  Id. at 1317, n.12.

Echoing the Eleventh Circuit's findings, the Eighth Circuit found that although a state defendant and a defendant under FFOA

may be "similarly situated (in that the intent of the judge was to provide them with the opportunity to have their convictions expunged), we still see a rational basis for treating differently state and federal convictions that are expunged." <u>Vasquez-Velezmoro</u> at 698.  "There are conceivable states of facts to explain treating differently aliens with state expunged convictions and aliens with FFOA expunged convictions."  <u>Id</u>.

The term of Carrizalos-Perez's probation was ten years – significantly longer than the one-year-or-less sentence of probation that defendants need to be eligible for FFOA relief. Since Carrizalos-Perez's sentence is different, treating him differently here is not arbitrary or unreasonable.


## CONCLUSION

Carrizalos-Perez has been "convicted" of a criminal offense as that term is defined by the Act and interpreted by the Board and the Fifth Circuit.  Additionally, Carrizalos-Perez has been convicted of an "aggravated felony" as that term is defined by the

Act and interpreted by the Fifth Circuit.  For the foregoing reasons, the Court should dismiss the petition for review.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

August 29 , 2002

38

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

Lisa Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586

on this _29th_ day of August, 2002.

LISA M. PUTNAM
Special Assistant United States Attorney



OPTIONAL FORM 155-A (6-82)
(Formerly OF-155)
• DEPT OF STATE

NSN 7540-01-126-7761

50155-201

## IV-8,781,160

# IMMIGRANT VISA AND ALIEN REGISTRATION

☑ THE IMMIGRANT HAS BEEN PREVIOUSLY IN THE UNITED STATES

| OF: | (Family Name) | (First Name) | (Middle Name) | INS FILE #, IF KNOWN |
|-----|---------------|--------------|---------------|----------------------|
| | CARRIZALES-PEREZ, DANIEL | | | |

ACTION BY IMMIGRATION INSPECTOR

THE IMMIGRANT NAMED ABOVE ARRIVED IN THE UNITED STATES VIA *(Name of vessel or flight no. of arrival)*

INELIGIBILITY FOR VISA WAIVED UNDER SECTION

☐ 212(e)   ☐ 212(h)
☐ 212(g)   ☐ 212(i)

U. S. IMMIGRATION
408 PGR 4

DEC 21 1983

ADMITTED _P-2-2_
(CLASS)

UNTIL _INDEFINITELY_

| CITY AND COUNTRY OF BIRTH | | MO-DAY-YR OF BIRTH |
|---|---|---|
| Matamoros, Tamaulipas  MEXICO | | 01-03-66 |
| CITY AND COUNTRY OF LAST RESIDENCE | | NATIONALITY |
| La Sierrita, Tamaulipas  MEXICO | | Mexican |
| MARITAL STATUS ☐M ☑S ☐W ☐D ☐SEP | MOTHER'S FIRST NAME  Manuela | FATHER'S FIRST NAME  J. Santos |

| FINAL ADDRESS IN THE UNITED STATES | STREET ADDRESS, INCLUDE—IN CARE OF & APT# IF APPLICABLE  509 14th. Street | CITY, STATE, AND ZIP CODE, IF AVAILABLE  Donna, Texas 78537 |
|---|---|---|

SEC. 212(a)(14)
LABOR CERTIFICATION ☑ NOT APPLICABLE ☐ NOT REQUIRED ☐ ATTACHED

OCCUPATION  Laborer  LAB

SEX M ☑
F ☐

This visa is issued under Section 221 of the Immigration and Nationality Act, and upon the basis of the facts stated in the application. Possession of a visa does not entitle the bearer to enter the United States if at the time he seeks to enter he is found to be inadmissible. Upon arrival in the United States, it must be surrendered to a United States Immigration Officer.

AMERICAN

CONSULATE GENERAL
MONTERREY, N. L. MEXICO

AT

Daniel J. Lawler, Jr.
Vice-Consul of the United States of America

Tariff No. 21
Fee Paid $75
Local Cy. Equiv. _____

FOREIGN SERVICE
UNITED STATES OF AMERICA

| IMMIGRANT CLASSIFICATION | | |
|---|---|---|
| CLASSIFICATION SYMBOL  P2-2 | | |
| FOREIGN STATE/OTHER AREA LIMITATION | | |
| IMMIGRANT VISA NO. | | |
| ISSUED ON    (Day)    (Month)    (Year)  DEC 19 1983 | | |
| THE VALIDITY OF THIS VISA EXPIRES MIDNIGHT AT THE END OF  (Day)    (Month)    (Year)  APR 18 1984 | | |

| PASSPORT | | |
|---|---|---|
| NO.  B  MAC  5246 | | mlt.- |
| OR OTHER TRAVEL DOCUMENTS (Describe) | | |
| ISSUED TO | | |
| BY | | |
| ON | | |
| EXPIRES | IV-8,781,160 | |

| ACTION OF I.J. | ACTION ON APPEAL | U.S.P.H.S. | PROCESSED FOR I-551. TEMPORARY EVIDENCE OF LAWFUL ADMISSION FOR PERMANENT RESIDENCE VALID UNTIL _JUNE 20 1984_ |
|---|---|---|---|



**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

**THE GRAND JURORS** for the County of Brooks, State aforesaid, duly selected, organized, impaneled and sworn as such at the **FEBRUARY** Term, A. D., 1997, of the District Court of the 79th Judicial District, in and for Brooks County, a quorum thereof being present, upon their oaths present in and to said court that

<u>**DANIEL P. CARRIZALES**</u>

on or about the **12TH** day of December A.D., 1996, and anterior to the presentment of this Indictment, in Brooks County and State aforesaid, did then and there intentionally and knowingly possess a usable quantity of marihuana of 50 lbs. or less but more than 5 lbs.,

against the peace and dignity of the State.

Foreman of the Grand Jury

COUNTY OF BROOKS          §

THE STATE OF TEXAS       §

I, <u>Pete Martinez</u>, Clerk of the <u>79th Judicial</u> District Court of <u>Brooks</u> County, Texas, do hereby certify that the within and foregoing is a true and correct copy of the original Bill of Indictment, filed in said court on the *16th* day of *May* A.D. 19*97*, in cause No. *5436* styled The State of Texas vs. *Daniel P. Carrizales*

Given under my hand and the seal of said Court, at office in <u>Falfurrias</u> this *16th* day of *May* A.D. 19*97*.



Pete Martinez

By *Michele Williams* Deputy

---

FILE NO. *97-05-05436*

THE STATE OF TEXAS

VS.

DANIEL P. CARRIZALES

OFFENSE: Possession of Marihuana

JOE FRANK GARZA,
DISTRICT ATTORNEY

TRUE BILL

*Alan O'Brien*
Foreperson of Grand Jury

Filed on the *16th* day
of *May*, 1997

Pete Martinez
Clerk of District Court
Brooks County, Texas
By: *Michele Williams*
Deputy

Amount of Bail $*16,000.00*

Deferred Adjudication, Proba
tion, S.B. No. 382. 9/1/75

AT 12:32 O'CLOCK P. M
FILED
JUN 10 1997
The Matisse City Clerk Brooks Co., TX
BY _____ Deputy

CAUSE NO. 97-05-5436

THE STATE OF TEXAS

VS.

Daniel P. Carrizales

DEFENDANT'S ADDRESS:
3757 N. 900 West #122
Cromwell, Indiana
78537

[]
[]
[]
[]
[]
[]
[]
[]
[]
[]
[]
[]
[]

IN THE DISTRICT COURT

BROOKS COUNTY, TEXAS

OFFENSE: P.O.M.
3rd Degree
Felony

DATE OF OFFENSE: 12/12/96
D.O.B. OF DEF: 1/3/66

ON THIS day this cause was called to trial and the State
appeared by and through the office of the District Attorney, and
the Defendant appeared, in person and by his attorney, both parties
having announced ready for trial and having filed written waiver of
trial by jury as approved and entered by the Court in the Minutes
of the Court;

WHEREUPON, the State's Attorney having read the allegation of
criminality on file herein, the Defendant pleaded guilty to said
charge, and, after the Court admonished said Defendant concerning
the consequences of his plea of guilty, said defendant insisted
upon pleading guilty It plainly appearing to the Court that the
Defendant is sane and uninfluenced by any consideration of fear,
persuasion, delusive hope of pardon prompting him to confess his
guilt, said plea of guilty is by this Court received and entered of
record upon the minutes of the Court as the plea of the Defendant
herein.

The Defendant herein having filed written waiver of all legal
rights pertaining to the confrontation and examination of witnesses
and consenting to evidence in the form of affidavits, documents and
stipulations in proof of the offense alleged, such waiver is
consented to and approved by the court and ordered filed herein.

WHEREFORE, the State having satisfied the Court by legal and
sufficient evidence substantiating the defendant's guilt, the
Court, after hearing and considering the evidence and argument of
counsel, finds that the best interests of both the public and the
Defendant will be subserved if further proceedings in this cause be
deferred and the Defendant be placed on probation under the
supervision of the Court for a period of    Ten (10)    years.

IT IS ORDERED that further proceedings be deferred without an adjudication of guilt during the good behavior of the Defendant and that he is hereby placed on probation for the term set out above, beginning on this date, under Court supervision, as set forth below, viz:

The Defendant shall:

1.  Commit no offense against the laws of this State or any other State or of the United States of America;

2.  Abstain from the consumption of alcohol in any form at any time and do not go upon any premises where alcoholic beverages are served or sold as the primary business purposes;

3.  Avoid injurious or vicious habits and abstain from the use of harmful substance, narcotic drug or other controlled substances in any form, except as prescribed by a licensed physician for medical purposes;

4.  Avoid places and persons of harmful or disreputable character, including places where controlled substances or dangerous drugs are illegally possessed, sold or used and specifically not associate with persons with felony criminal records;

5.  Report in person, during the term of probation, to the Adult Probation Officer of this County, once each month, between the first and tenth days of the month;

6.  Permit the probation Officer to visit you in your home or elsewhere in order to supervise this probation;

7.  Not leave the State of Texas or the County of approved residence without first obtaining permission in writing from the Probation Officer showing that the Court authorizes such removal;

8.  Support your dependents, if any;

9.  Report in person or by letter to the Probation Officer within five days after any charge of violating any law of the State of Texas or any other state or of the United States of America has been made against the defendant, stating the offense charged, the Court in which the charges is filed, and disposition of the charge.

10. Furnish the Probation Officer with accurate information concerning background and present status and report in person or by letter, within five days, any changes in employment or marital status.

11. Not purchase nor have in possession a rifle, shotgun, revolver, or any other weapon, either at home, in an

automobile or on the defendant's person;

12. Submit to a breath test for alcohol and a urinalysis immediately upon arrest for any offense or when requested by the Probation Officer for the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs, marijuana or any other controlled substance:

13. Abide by an 10:00 P.M. curfew every night. The defendant shall be in the defendant's home or place of residence before 10:00 P.M. each night and shall not leave such home or place of residence between 10:00 P.M. and 5:00 A.M. without written permission of the Probation Officer. The written permission, when issued, is to be kept on the defendant's person when away from or place of residence.

14. Report all income and the sources of income from whatever source to the Probation Officer. Income means wages, salary, commission, gifts, loans, found property and anything else of value, no matter how acquired.

15. Pay to the Probation Officer of this county, a probation supervision fee of $50.00 per month every month of the probationary period beginning in the month next following entry of this Order;

16. Pay a fine of $ _7,000.00_ payable:

_____ A. Instanter

_____ B. $_____ within ____ days of the date of this judgment.

___✓___ C. $_100_ per month, beginning on _7-1-97_, and on the first day of the month thereafter until paid in full.

_____ D. $_____, instanter, and $_____ per month, beginning on _____, and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, Brooks County Courthouse, P.O. Box 534, Falfurrias, Texas.

17. Pay Court Costs of $162.50 and the fee for court appointed counsel of $_151.00_, payable:

_____ A. Instanter

___✓___ B. Within _90_ days of the date of this judgment.

_____ C. At $_____ per month, beginning on _____

and payable thereafter on the first day of each month until paid in full.

_____ D.  $_____, instanter, and $_____
per month, beginning on _____
and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, Brooks County Courthouse, P.O. Box 534, Falfurrias, Texas.

18.  Make restitution to _____
_____ in the amount of $_____ payable:

_____ A.  Instanter

_____ B.  Within ___ days of the date of this judgment.

_____ C.  At $_____ per month, beginning on _____
___and payable thereafter on the first day of each month until paid in full.

_____ D.  $_____, instanter, and $_____
per month, beginning on _____
and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, Brooks County Courthouse, Falfurrias, Texas.

19.  Pay to the Texas Department of Public Safety, Crime Laboratory, P. O. Box 5277, Corpus Christi, Texas 78465-5277, in the sum of $_____ as reimbursement for costs incurred in the confiscation, analysis, storage, or disposal of raw materials, controlled substances, chemical precursors, drug paraphernalia, or other materials seized in connection with this offense, as follows:

_____ A.  Instanter

_____ B.  Within _____ days of the date of this judgment.

_____ C.  At $_____ per month, beginning on _____,
and payable thereafter on the first day of each month until paid in full.

_____ D.  $_____, instanter, and $_____ per month, beginning on _____
and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, Brooks County Courthouse, Falfurrias, Texas.

### CHECK OFF THE FOLLOWING IF APPLICABLE

_____ Assigned to Intensive Probation (Intensive Supervision Project) for one (1) year or until the level of supervision is changed by the Court and/or the Probation Officer. Submit a urine specimen at the direction of the Probation Officer, daily if ordered. Report twice monthly or as directed by the Adult Probation Department.

_____ Assigned to Intensive Probation for Specialized Caseload-- (circle One: mental Health, Developmentally Disabled Alcohol, Drug) Offenders (in lieu of incarceration if TDC) for a period of one (1) year or until the level of supervision is changed by the Court and/or the Probation Officer. Report twice monthly or as directed by the Adult Probation Department.

__✓__ Submit a urine specimen at the direction of the Probation Officer, daily if ordered.

__✓__ Attend and participate with drug counseling (out-patient) and remain until officially discharged by the proper authorities.

_____ Attend and Participate with alcohol counseling (out-patient) and remain until officially discharged by the proper authorities.

_____ Attend and participate with Family Violence counseling (out-patient) and remain until officially discharged by the proper authorities.

_____ Attend and participate with professional counseling and/or psychological/psychiatric treatment (out-patient) as directed by the Adult Probation Department and continue with said counseling until officially discharged by the proper authorities.

_____ Attend and participate with residential treatment at the Center for Health Care Services and remain until officially discharged by the proper authorities.

_____ Attend and participate with alcoholic anonymous meetings (2 times per week) until discharged by your Probation Officer.

_____ Obtain and keep gainful employment during the period of this probation.

__✓__ ~~Obtain your General Equivalent Diploma (GED) within (1) one year from the date of your probation.~~ Must complete an adult education and/or English literacy course.

_____ Enroll in high school and remain there until successful completion of all requirements necessary to obtain a high school diploma. The defendant shall have no unexcused absences while enrolled in high school.

_____ Upon obtaining a high school diploma, attend either a vocational school, college or university and remain there until successful completion of all requirements necessary to obtain a degree or certificate.

_____ Enroll in an Adult Education or English Literacy Program and remain until officially discharged by proper authorities.

_____ Enlist in the armed services of the United States of America and remain there until successful completion of the term of enlistment.

__✓__ Attend and participate with the Community Service Restitution Program and complete _240 HRS_ starting _1-1-97_ at _16_ hours per month. (A minimum of 16 hours per month).

_____ Attend and participate with the Job Corp Program, beginning _____. Defendant shall continue with said program until discharged by proper authorities.

_____ The defendant shall submit to Acquired Immune Deficiency Syndrome (HIV) testing and/or counseling as directed by the Brooks County Community Supervision and Corrections Department within thirty (30) days from the date of the signing of this Order.

FOR D.W.I. DEFENDANTS:

_____ a. SUCCESSFULLY COMPLETE within 60 days of the date of this Order the Brooks County Traffic Safety Education Program (for Rehabilitation of persons who have driven while intoxicated). Note: a $35.00 fee is charged for this program. This fee is to be paid within 30 days from the date of this Order.)

_____ b. If you operate any motor vehicle—obtain and maintain at least minimum limits of Automobile Liability Insurance as required by V.C.S. 6701h 1A Proof of such insurance shall be shown to the Probation Officer within 15 days of the date of this ORDER, and monthly throughout the probation term.

_____ PARTICIPATE IN A Community-based Alcohol/Drug Abuse Program: _____

_____    PROBATION  REVIEW:    DRIVERS  LICENSE  SUSPENDED  FOR  12
MONTHS  PROBATED  24  MONTHS

6-10-97
RML



R. Thumb

The  court  further  finds  there  was  in  existence  a  plea
bargaining  agreement  between  the  state  and  the  defendant  and  that
the  punishment  assessed  does  not  exceed  the  punishment  recommended.

Done  in  Open  Court  this  ___10___  day  of  ___June___,
1997.

_____          _____
Defendant  acknowledges  that  he          Terry A. Canales
has  read  &  received  a  copy  of          District  Judge
above  order                              Brooks  County,  Texas



**U.S. Department of Justice**
Immigration and Naturalization Service

**Notice to Appear**

---

**In removal proceedings under section 240 of the Immigration and Nationality Act**

| | File No: | A 38 781 160 |
|---|---|---|

In the Matter of:
Respondent:           Daniel CARRIZALES-Perez

3757 North 900 West Lot # 122
Cromwell, Indiana 46732                                      (219) 856-7267
( Number, street, city, state and ZIP code )          ( Area code and phone number )

- [ ] 1. You are an arriving alien.

- [ ] 2. You are an alien present in the United States who has not been admitted or paroled.

- [X] 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1). You are not a citizen or national of the United States;

2). You are a native of     Mexico     and a citizen of     Mexico     ;

3). You were admitted to the United States at     Progreso, Texas     on or about     December 21, 1983     ;
as an  immigrant :

4). You were, on     June 10, 1997     , convicted in the District Court of the 79th Judicial District, in an for Brooks County,
for the offense of Possession of a Controlled Substance, to wit: Marijuana , in violation of Section 481.1151 of the Texas
Controlled Substance Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
provision(s) of law:

Section 237 (a) (2) (A) (iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have
been convicted of an aggravated felony as defined in Section 101 (a) (43) (B) of the Act, an offense relating to the illicit trafficking in
a controlled substance, as described in section 102 of the Controlled Sustances Act, including a drug trafficking crime, as defined in
section 924 (c) of Title 18, United States Code.

Section 237 (a) (2) (B) (i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been
convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign
country relating to a controlled substance (as defined in Section 102 of the Controlled Substance Act, 21 U.S.C. 802), other than a
single offense involving possession for one's own use of 30 grams or less of marijuana.

- [ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

- [ ] Section 235 (b) (1) order was vacated pursuant to:    [ ] 8 CFR 208.30 (f) (2)    [ ] 8 CFR 235.3 (b) (5) (iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
Executive Office for Immigration Review
201 East Jackson Street, Harlingen, Texas 78556
( Complete Address of Immigration Court, Including Room Number, if any )

on   TO BE SET     at   TO BE SET   to show why you should not be removed from the United States based
on the charge(s) set forth above.

*Charles A. Roberson by RHR*
Charles A. Roberson   Patrol Agent In Charge
( Signature and Title of Issuing Officer )

Date:   May 4, 2000                                   Falfurrias, Texas
( City and State )

**See reverse for important information**

Form I-862 (Rev.4/1/97)

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. Your are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the Immigration Judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

Before: _____

_____
( Signature and Title of INS Officer )

_____
( Signature of Respondent )

Date: _____

### Certificate of Service

This Notice to Appear was served on the respondent by me on _____May 4, 2000_____ , in the following manner and in compliance with section 239 (a) (1) (F) of the Act:
( Date )

[ ] In person     [X] by certified mail, return receipt requested     [ ] by regular mail
receipt number: **7099 3220 0002 7685 5287**

[X] Attached is a list of organizations and attorneys which provide free legal services.

[X] The alien was provided oral notice in the _____Spanish_____ language of the time and place of his or her hearing and the consequences of failure to appear as provided in section 240 (b) (7) of the Act.

Served by Certified Mail. Receipt number: 7099 3220 0002 7685 5287 _Roger A. Reyna_
( Signature of Respondent if Personally Served )

Roger A. Reyna
Border Patrol Agent
( Signature and Title of Officer )

GOVERNMENT
EXHIBIT

D

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
Harlingen, Texas

File No.:  A 38 781 160                      June 8, 2001

In the Matter of              )
                              )
DANIEL CARRIZALES-PEREZ       )      IN REMOVAL PROCEEDINGS
                              )
            Respondent        )

CHARGE:         Section 237(a)(2)(A)(iii), Immigration and
                Nationality Act - convicted of an aggravated
                felony as defined under Section 101(a)(43)(B) of
                the Act; Section 237(a)(2)(B)(i), Immigration and
                Nationality Act - convicted of a law relating to a
                controlled substance.

APPLICATIONS:   Section 240A(a), Immigration and Nationality Act -
                cancellation of removal.

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Lisa S. Bodriaga,                 Kenneth Muir
Thelma O. Garcia,                 Assistant District Counsel
and Jack Hunter                   Immigration and Naturalization
301 East Madison                    Service
Harlingen, Texas 78550            P.O. Box 1711
                                  Harlingen, Texas 78551

ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent was placed in removal proceedings with the

issuance of a Notice to Appear dated May 4, 2000.  Assisted by

counsel, the respondent admitted the factual allegations in the

Notice to Appear, denied removability pursuant to Section

237(a)(2)(A)(iii) of the Immigration and Nationality Act, and

conceded removability pursuant to Section 237(A)(2)(B)(i) of the

Act. The respondent has filed an application for relief pursuant

to Section 240A(a) of the Immigration and Nationality Act.

1

SEP 2 9 2001

To be statutorily eligible for cancellation of removal under Section 240A(a) of the Immigration and Nationality Act, an alien must demonstrate that he or she has been lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of an aggravated felony.  In the case at bar, in light of the decision of the United States Court of Appeals for the 5th Circuit in United States v. Hernandez-Avalos, 2001 West Law 502383 (5th Cir. May 11, 2001), the Court finds that the conviction that brought the respondent to these proceedings is an aggravated felony.  The Immigration and Naturalization Service has presented the indictment, the waiver of arraignment, a P memorandum, and the judgment deferring the adjudication for consideration.  See Exhibits 4, 5, 6, and 7.  The Immigration Service has further offered to the Court the immigrant visa, an alien registration of the respondent to establish identity and alienage, and how he entered the United States.

Regardless of any admissions made by the respondent, the evidence submitted by the Immigration Service (Exhibits 3 through 7), the respondent's identity, alienage, and removability have been established with evidence that is clear and convincing.  The Court finds that the respondent is subject to being removed from the United States because he has been convicted of a law related to a controlled substance, and the conviction is an aggravated

A 38 781 160                    2                    June 8, 2001

felony as defined in Section 101(a)(43)(B) of the Immigration and Nationality Act.

The respondent has designated Mexico for removal.

With reference to the application for cancellation of removal (Exhibit 2), the Court defines that the respondent is not statutorily eligible for the same because he has been convicted of an aggravated felony.  Thus, it is necessary to consider the respondent's equities in the United States because he is not statutorily eligible for the relief that he seeks.  In light of the case on the 5th Circuit, to wit, <u>United States v. Hernandez-Avalos</u>, <u>supra</u>.

ORDER

IT IS ORDERED that the respondent's application for cancellation be denied for the reasons here and above stated.

IT IS FURTHER ORDERED that the respondent be removed from the United States to his native country of Mexico.


Date:  June 8, 2001            _____
                               DAVID AYALA
                               Immigration Judge




A 38 781 160                   3                   June 8, 2001



IMMIGRATION COURT
201 E. JACKSON STREET
HARLINGEN, TX  78550

In the Matter of

Case No.: A38-781-160

CARRIZALES-PEREZ, DANIEL
        Respondent                    IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on .
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X]  The respondent was ordered removed from the United States to
        *MEXICO*                                    or in the alternative to

[ ]  Respondent's application for voluntary departure was denied and
     respondent was ordered removed to
     alternative to

[ ]  Respondent's application for voluntary departure was granted until
          upon posting a bond in the amount of $ _____
     with an alternate order of removal to

[ ]  Respondent's application for asylum was ( )granted ( )denied
     ( )withdrawn.

[ ]  Respondent's application for withholding of removal was ( )granted
     ( )denied ( )withdrawn.

[X]  Respondent's application for cancellation of removal under section
     240A(a) was ( )granted (X)denied ( )withdrawn.

[ ]  Respondent's application for cancellation of removal was ( ) granted
     under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
     ( ) denied ( ) withdrawn. If granted, it was ordered that the
     respondent be issued all appropriate documents necessary to give
     effect to this order.

[ ]  Respondent's application for a waiver under section _____ of the INA was
     ( )granted ( )denied ( )withdrawn or ( )other.

[ ]  Respondent's application for adjustment of status under section _____
     of the INA was ( )granted ( )denied ( )withdrawn. If granted, it
     was ordered that respondent be issued all appropriate documents necessary
     to give effect to this order.

[ ]  Respondent's status was rescinded under section 246.

[ ]  Respondent is admitted to the United States as a _____ until _____.

[ ]  As a condition of admission, respondent is to post a $ _____ bond.

[ ]  Respondent knowingly filed a frivolous asylum application after proper
     notice.

[ ]  Respondent was advised of the limitation on discretionary relief for
     failure to appear as ordered in the Immigration Judge's oral decision.

[ ]  Proceedings were terminated.

[ ]  Other: _____.

     Date: 6-08-01
     Appeal: Waived/Reserved    Appeal Due By: Jul 9, 2001

                                          DAVID AYALA
                                          Immigration Judge

JGC



U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
Notice of Appeal to the Board of Immigration
Appeals of Decision of Immigration Judge

1. List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

A 38-781-160
DANIEL CARRIZALES-PEREZ

**!** WARNING TO ALL APPLICANT(S)/RESPONDENT(S): Names and "A" Numbers of everyone appealing the order must be written in Item #1.

For Official Use Only

2. Applicant/Respondent is currently ☐ DETAINED ☒ NOT DETAINED.

3. Appeal from the Immigration Judge's decision dated 6 8 01

4. State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

**!** WARNING: The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely, separate written brief or statement filed with the Board.

See attached . . . .

---

LAW OFFICE OF THELMA O. GARCIA
TRUST ACCOUNT
301 E. MADISON  PH. 956-425-3701
HARLINGEN, TX 78550

1657

88-901
1149

DATE 7-6-01

PAY TO THE ORDER OF  Board of Immigration Appeals                    $ 110.00

One hundred ten dollars                                    DOLLARS

**TEXAS STATE BANK**
No One Knows The Valley Like We Do.

FOR  Re: Daniel Carrizales Perez

A28 781 160  ⑆1657⑆  ⑈114909013⑇  ⑆530178971⑆

*WWW Version*

5.  I  ☒ do
       ☐ do not       desire oral argument before the Board  of  Immigration Appeals.

6.  I  ☒ will
       ☐ will not      file a separate written brief or statement in addition to the "Reason(s)  for
                       Appeal" written above or accompanying this form.

> **! WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing,  you fail to file the brief or statement and do not  reasonably explain such failure.

| SIGN HERE ➡ | 7.  X _Daniel Gonzales_ | _6_ / _8_ / _01_ |
|---|---|---|
| | Signature of Person Appealing | Date |
| | *(or attorney or representative)* | |

8.

**Mailing Address of Applicant(s)/Respondent(s)**

_DANIEL GARZA ALES-PEREZ_
(Name)

_RR5 BOX 31 DIAMOND ST._
(Street Address)

(Apartment or Room Number)

_DONNA TX 78537_
(City, State, Zip Code)

9.

**Mailing Address of Attorney or Representative**

_THELMA O. GARCIA_
(Name)

_301 E. MADISON_
(Street Address)

(Suite or Room Number)

_HARLINGEN, TX 78550_
(City, State, Zip Code)

> **! WARNING:**  An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

**CERTIFICATE OF SERVICE**
(Must Be Completed)

10.

I _DOLORES REYNA_                mailed or delivered  a copy of this notice of appeal
                (Name)

on _7-1-01_            to _GENERAL COUNSEL_
    (Date)                    (Opposing Party)

at _PO BOX 1711  HARLINGEN, TX 78550_
              (Address of Opposing Party)

| SIGN HERE ➡ | X _____ |
|---|---|
| | Signature of Person Appealing |
| | *(or attorney or representative)* |

**Have You?**

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all nor-English attachments

☐ Signed the form
☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Certificate of Service
☐ Attached the required fee or fee waiver request

The Immigration Judge erred in pretermitting the Respondents' application for relief when in fact the Court should have terminated the proceedings in that Matter of Manrique applies in this case since the Respondent had been placed on deferred adjudication on his criminal offense.

There are too many errors to identify without a transcript.

GOVERNMENT
EXHIBIT
_G_

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision o.    ~ Board of Immigration Appeals

Falls Church, Virginia 22041

---

File:  A38 781 160 - Harlingen                    Date:

In re: DANIEL CARRIZALES-PEREZ                    JUN 0 7 2002

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Thelma O. Garcia, Esquire

ON BEHALF OF SERVICE:    Thomas M. Bernstein
                         Assistant District Counsel

CHARGE:

    Notice:  Sec.    237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                     Convicted of aggravated felony

             Sec.    237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -
                     Convicted of controlled substance violation

APPLICATION:  Termination of proceedings; cancellation of removal

ORDER:

    PER CURIAM: The appeal is dismissed. We affirm the Immigration Judge's determination that the respondent, a native and citizen of Mexico, is deportable as charged and subject to removal from the United States (Exh. 1; I.J. at 2-3). *See* section 240(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(c)(3). We likewise affirm the Immigration Judge's pretermission of the respondent's application for cancellation of removal as an alien convicted of an aggravated felony (I.J. at 2-3).

    The Immigration Judge found the respondent's conviction for possession of marijuana to be an aggravated felony (I.J. at 2-3). *See United States v. Hernandez-Avalos*, 251 F.3d 505, 508-10 (5th Cir. 2001) (finding that a state drug conviction is an "aggravated felony" if it is punishable under the Controlled Substance Act and is a felony under state law). We agree. Therefore, we find that the respondent is ineligible for cancellation of removal (I.J. at 2-3). *See* section 240A(a)(3) of the Act (prohibiting cancellation of removal for any alien convicted of any aggravated felony).

    On appeal, the respondent argues that *Hernandez-Avalos, supra,* is not applicable to his case. Specifically, the respondent argues that his conviction cannot be characterized as a felony because he has been placed on community supervision and his conviction is subject to deferred adjudication,

XC: Binder
    Tom

rather than being subject to incarceration for a specific period of time (Respondent's Brief at 17; Form EOIR-26). However, under Texas law, the period of community supervision may not exceed 2 years in a misdemeanor case, but may be imposed up to 10 years in a felony case. *See* Tex. Crim. Proc. Ann. art. 42.12, § 5(a). The record reveals that the respondent was placed on community supervision for a period of 10 years (Exh. 7). Thus, the respondent's conviction can be properly characterized as a felony. *See Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002) (finding an alien who pled guilty to possession of marijuana to be an aggravated felon under Fifth Circuit law).

The respondent also argues on appeal that his deportation results in an impermissible retroactive application of the law because when he pled guilty to his marijuana charge, such a disposition carried no immigration consequence. We cannot rule on the constitutionality of laws enacted by Congress, and therefore decline to address the respondent's contentions regarding the retroactive application of section 101(a)(48). Moreover, the respondent entered his guilty plea after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-627 ("IIRIRA"), which amended the definition of an aggravated felony. As for the changes in how section 101(a)(48) is interpreted in recent precedent decisions issued by this Board, we note that they occurred as a result of the statutory amendments. Following the enactment of IIRIRA, the law relating to aggravated felonies changed along with the statute. The most recent Board rulings in this area of the law that characterize the respondent as an aggravated felon largely reflect the statutory changes and are not changes of the Board's own making. *See Matter of Salazar*, *supra*.

Consequently, we can discern no error committed by the Immigration Judge below in determining that the respondent is ineligible for removal relief, and affirm the Immigration Judge's rationale and result (I.J. at 2-3). Accordingly, the appeal is dismissed.

FOR THE BOARD