United States District Court
Southern District of Texas
FILED

SEP 1 8 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL CARRIZALES-PEREZ,        )
                                )
v.                              )        C.A. B-02-136
                                )
AARON CABRERA, et al,           )
_____)

### PETITIONER'S OPPOSITION TO MOTION TO DISMISS, AND (OPPOSED?) MOTION TO HOLD IN ABEYANCE PENDING A DECISION IN *SALAZAR-REGINO v. TROMINSKI*, C.A. B-02-045

Petitioner, by and through the undersigned, respectfully opposes Respondents' Motion to Dismiss, (herein cited as (INS:___)). Although Respondent has set forth an "alternative" statement, none of the pertinent facts in Mr. Carrizales' (verified) petition have been denied or contested, and are therefore taken herein as established. And, contrary to Respondents' claim, (INS:1), the issues presented herein have **not** been decided by the Fifth Circuit.

### I. BACKGROUND

Petitioner concurs with INS' representation, (INS:1,n.1), that the instant case involves many of the same issues as *Salazar-Regino v. Trominski, supra*. Since there are already several cases in this series, and will doubtless be many more, the undersigned has spoken with Lisa Putnam, counsel for Respondents, about the possibility of holding these cases in abeyance, pending a decision in *Salazar-Reyna*. Although the initial response was encouraging, Respondents have not yet taken a definitive position on the issue. Therefore, the motion is, at this point, deemed opposed. However, in the interest of brevity, Petitioner would incorporate by reference the Petitioner's Opposition to Respondent's Motion To Dismiss in *Salazar-Regino, supra*.

I.  BACKGROUND

On or about June 10, 1997, pursuant to a plea bargain, Mr. Carrizales pled guilty to the offense of (simple) possession of marijuana in Brooks County, Texas. Adjudication of guilt was deferred, and he was placed on probation. At that time, said disposition was not considered to render Mr. Carrizales subject to deportation. *Matter of Manrique*, I.D. 3250 (BIA 1995). Although the statutory definition of "conviction" was changed on September 30, 1996, most immigration attorneys considered that this would not change the result, since *Manrique* was based on policy considerations, not on the definition of conviction. Furthermore, even if it had been considered a conviction, under Board precedent at that time, it was not an aggravated felony, so he would still have been eligible for relief from removal.[1]

However, under the law as presently interpreted, he is subject to deportation, and ineligible for any form of relief. In other words, due to changes solely in the *interpretation* of the law between the time of his plea bargain, and when his case was finally heard, the status of his offense went from one which carried no immigration consequences at all, to one which required his mandatory deportation, with no opportunity to apply for any form of relief.

This, he urges, would create serious constitutional problems, under

---

[1] INS correctly notes that, (INS:2-3), at his hearing, Mr. Carrizales admitted that the offense constituted a "conviction." However, at that time, he was eligible for cancellation. This is very similar to the situation faced in the prior litigation over AEDPA §440(d), where the Attorney General allowed LPRs who had conceded removability, expecting to apply for §212(c) relief, to reopen their cases to contest deportability. *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; AG 1997).

cases such as *INS v. St. Cyr,* 121 S.Ct. 2271 (2001) (construing IIRIRA such as to permit LPRs who pled guilty prior to its enactment to still seek relief under §212(c)), and *BMW of North America v. Gore,* 517 U.S. 559,574 (1996) (holding that, even in the context of *civil* penalties, "Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.) Notably, deportation is a civil penalty.

Consequently, he urges that this Court has an obligation to interpret the law in a manner which avoids these problems, even if it has to "stretch" to do so, as the Supreme Court did in *INS v. St. Cyr, supra,* and *Zadvydas v. Davis,* 121 S.Ct. 2492 (2001):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." ... We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem[s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue"). For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

This Court must therefore seek a construction of §1226(c)(1) which

avoids these problems, even if, as in *Zadvydas*, this requires the Court to read additional limitations into the statute. Here, as in *St. Cyr*, the Court should read into the statute a limitation that it was not intended to be applied to lawful permanent residents who entered pleas to offenses involving the simple possession of a controlled substance at a time when, under BIA precedent, such a disposition rendered them eligible for cancellation of removal for lawful permanent residents under 8 U.S.C. §1229a(a). *See, Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of K-V-D-*, Int. Dec. 3422 (BIA 1999). *See also, Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without a trafficking element constitutes an "aggravated felony" under Immigration and Naturalization Act, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act).

As previously discussed, the criticism of *Matter of K-V-D-* in *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) was *dicta*. The Court was not then addressing the impact on a lawful permanent resident who pled guilty to an offense in reliance on the availability of relief, or, as in the case of Mr. Carrizales, on the fact that his plea did not even render him subject to removal!

## II. SINCE THE BIA CANNOT HEAR CONSTITUTIONAL CHALLENGES, IT WOULD HAVE BEEN FUTILE FOR MR. CARRIZALES TO HAVE RAISED THEM

*Goonsuwan v. Ashcroft*, 252 F.3d 383 (5th Cir. 2001) predated *St. Cyr*, so it cannot be read in a manner which conflicts with the Supreme Court's holding therein. Nonetheless, *Goonsuwan* reaffirms the "futility" exception to exhaustion of remedies. 252 F.3d at 389. It is beyond dispute that the BIA lacks jurisdiction to hear Mr. Carrizales's constitutional claims. *See, e.g., Matter of*

4

*Finnair Flight AY103* (BIA 2001): [2]

> To the extent that the respondent is challenging the constitutionality of the Service's regulations or claiming that the conflict is unconstitutional, we note that it is well settled that the Board lacks jurisdiction to entertain such constitutional challenges.

Consequently, it would have been futile for Mr. Carrizales to have raised such issues before the Board.

### III. THE MERITS

As noted, Mr. Carrizales incorporates by reference the opposition to the Respondents' Motion to Dismiss in *Salazar-Regino, supra*. Should the Court decline to hold the instant case in abeyance pending a decision therein, he will augment his opposition herein. However, for the time being, he will simply reiterate his claims.

#### 1. STATUTORY CONSTRUCTION
#### a. AGGRAVATED FELONY

Mr. Carrizales first urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether his deferred adjudication disposition constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Carrizales. To the contrary, Mr.

---

[2] To the extent that questions of statutory interpretation might have resulted in a finding that he was not deportable under either of the two charges brought, and therefore, in theory, could have been heard by the Fifth Circuit, this Court nonetheless can exercise supplemental jurisdiction with respect thereto, pursuant to 28 U.S.C. §1367. *See also, U.S. ex rel. Marcello v. INS,* 634 F.2d 964,971 (5th Cir.1981), where INS attempted, without success, to import an exhaustion requirement into habeas relief in deportation cases. *Marcello* was one of the cases the Court cited in *St. Cyr, supra* at 2284-85, in reaching the conclusion that Congress had not amended or repealed 28 U.S.C. §2241.

Carrizales asserts that the Board correctly decided *Matter of K-V-D-*, and that it erred in not applying said decision herein. *See, Gerbier v. Holmes*, 280 F.3d. 297 (3rd Cir. 2002).

### b. *MATTER OF ROLDAN*.

Mr. Carrizales also urges that *Matter of Roldan*, Int. Dec. No. 3377 (BIA 1999), was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra*. *See*, Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (23 I&N Dec. at 237-251). *See also*, Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined. (23 I&N Dec. at 251-252).

### 2. EQUAL PROTECTION
### a. FEDERAL FIRST OFFENDER ACT

Mr. Carrizales next asserts that, for the reasons set forth in *Lujan-Armendariz*, 222 F.3d 728 (9th Cir. 2000), it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Carrizales also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly,

within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### C. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Carrizales's case been heard between March 3, 1999, and May 11, 2001, (after the BIA issued *Matter of Roldan*, and before the Fifth Circuit decided *Hernandez-Avalos*), he would have been considered to subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion. It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings.

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Carrizales has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Matter of Salazar-Regino,* 23 I&N Dec. 223,238 (BIA 2002). *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption,

similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Carrizales enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Carrizales asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Carrizales also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Carrizales retroactively converts a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges*, 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid*. (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See*, Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329, 333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; see id. at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); see, e.g., *Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary

9

administration of psychotropic drugs).

These protections exist even though deportation, a civil penalty, rather than criminal punishment, is involved. As held in *BMW v. Gore*, 517 U.S. 559, 574 (1996) (footnote in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.*, at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner*, 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Carrizales, there can be not question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary

notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [3]

### 5. INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Carrizales urges that the instant order violates international law, and treaty obligations between the United States and Mexico, his country of origin.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and proposed Order, was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen TX 78551, this 17th day of September, 2002.

---

[3] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).